## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3017-24

KRISTIN ORR,[1]

    Plaintiff-Appellant,

v.

ELIZABETHTOWN GAS and
SOUTH JERSEY INDUSTRIES,

    Defendants-Respondents,

and

PUBLIC SERVICE ENTERPRISE
GROUP (PSEG), NEW JERSEY
AMERICAN WATER, VERIZON,
TOWNSHIP OF WESTFIELD,
COUNTY OF UNION, STATE OF
NEW JERSEY, and BINGHAM &
TAYLOR,

    Defendants.

_____

    Argued May 27, 2026 – Decided July 24, 2026

    Before Judges Gooden Brown and Rose.

---

[1]  Improperly pled as "Kristen Orr."

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3033-22.

Eric G. Kahn argued the cause for appellant (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, attorneys; Eric G. Kahn, of counsel; Annabelle M. Steinhacker, on the briefs).

Brian D. Barr argued the cause for respondents (Cooper Levenson PA, attorneys; Brian D. Barr and Jennifer B. Barr, on the brief).

PER CURIAM

Plaintiff Kristin Orr appeals from a February 14, 2025 Law Division order denying reconsideration of the January 3, 2025 summary judgment dismissal of her first amended negligence complaint against defendants Elizabethtown Gas and South Jersey Industries (together, defendants or defendant utility companies), and the same orders barring her expert's testimony on causation as net. On appeal, plaintiff argues the motion court erroneously dismissed, sua sponte, her action under a notice theory not argued by the defendant utility companies. Plaintiff further argues, regardless, whether she can prove notice is a jury question. Maintaining her expert's opinion is not net, plaintiff claims, in the alternative, the court should have conducted an N.J.R.E. 104 hearing or excised the offending portions of the opinion in lieu of barring her expert's testimony. Because we conclude plaintiff was not afforded an opportunity to

2

address the notice theory decided by the court, and her expert's opinion should have been tested at an N.J.R.E. 104 hearing, we reverse and remand for proceedings consistent with this opinion.

I.

We summarize the pertinent facts and events from the motion record in a light most favorable to plaintiff as the non-moving party. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

During the afternoon of November 12, 2021, plaintiff tripped and fell while stepping off a curb on East Broad Street in Westfield. In her first amended complaint, plaintiff asserted a negligence claim against all defendants.[2]

---

[2] In her first amended complaint, plaintiff also sued Public Service Enterprise Group (PSEG), New Jersey American Water, Verizon, Township of Westfield, County of Union (Union County), State of New Jersey, and Bingham & Taylor. Before defendants moved for summary judgment, all entities except Union County, were dismissed from the litigation with prejudice. In particular, in their stipulation, plaintiff and Union County agreed, if plaintiff's appeal against defendants was successful, Union County would be reinstated as a defendant. Because we deemed plaintiff's dismissal against Union County "without prejudice," we sua sponte dismissed plaintiff's appeal. Orr v. Elizabethtown Gas, No. 2031-24 (App. Div. Apr. 25, 2024) (citing Grow Co., Inc. v. Chokshi, Pharmachem Labs., Inc., 403 N.J. Super. 443, 460 (App. Div. 2008)). Thereafter plaintiff dismissed her claims against Union County with prejudice. Accordingly, we granted her motion to file a notice of appeal as within time. Orr v. Elizabethtown Gas, No. A-3017-24 (App. Div. June 19, 2025). Only the defendant utility companies are parties to this appeal.

At deposition, plaintiff claimed when she stepped off the curb, the toe of her left shoe became wedged in the gap between a gas cap's metal rim and cover. Plaintiff estimated, together, the metal ring and cover were about two centimeters lower than the street.

In response to defendants' request for admissions, plaintiff acknowledged: "the utility cover caused [her] fall and injury"; her "footwear caught on the lip of the utility cover, which caused [her] fall and injuries"; "[t]he pavement around the utility cover did not cause [her] to fall"; and "[t]he height elevation between the utility cover and the paving of the street did not cause [her] fall." Plaintiff further clarified, "[t]he lip of the metal cover caught [her] shoe and caused [her] fall" and "[t]he sunken part of the cover and exposed lip caused [her] fall."

In his January 29, 2024 affidavit, Adam McLaughlin, Senior Director of Regional Operations for Elizabethtown Gas, asserted he examined the gas cap cover at issue and determined Bingham & Taylor manufactured the cover. He further stated, "Elizabethtown Gas did not exercise control over the design, manufacturing, packaging or labeling of the gas cap cover."

4

At deposition,[3] McLaughlin testified "typically" Elizabethtown Gas receives calls when gas caps are "paved over" and, in response, will "refine" the caps. Referencing photographs of the gas cap, apparently taken after the street was repaved, McLaughlin acknowledged there was "some erosion" "around the entire circumference of this particular gas cap valve." McLauglin elaborated: "With these type [sic] of valves, unless the road was brand-new paved, that's going to happen. There's [sic] thousands of those out there and none of them are ever going to be, after a few years, completely flush and neat." McLaughlin explained, he was more concerned with his ability to access and turn the valve than whether the way in which the gas cap was situated was "ideal in the industry." McLaughlin was not "aware of any policy or procedure" requiring a periodic inspection of the valve at issue here "for any reason."

Plaintiff's expert, Charles J. Witczak III, PE, PP, prepared a report after reviewing: plaintiff's interrogatory answers and deposition testimony; the utility defendants' interrogatory answers; McLaughlin's affidavit and deposition

_____

[3] After plaintiff filed her appeal, she moved to supplement the record with McLaughlin's deposition testimony, contending his transcript was not provided to the motion court in light of defendants' argument under the PLA. We granted her motion "without prejudice to the merits panel's right to disregard the supplemental material." Orr v. Elizabeth Town Gas, No. A-3017-24 (App. Div. Sept. 30, 2025).

testimony; and photographs provided by plaintiff. Witczak also visited the accident site with plaintiff's counsel. Apparently, Witczak did not review plaintiff's response to defendants' request for admissions.

In his November 7, 2024 report, Witczak stated the location depicted in plaintiff's photographs, "taken the day after her fall," indicated the roadway had been paved, but "the subject valve box was not adjusted." Accordingly, the top of the box was not "flush with the new pavement surface." Conversely, on the day of his site visit, the valve box sat flush with the surface, indicating "the accident location [had been] repaved and the valve box was adjusted."

Witczak described "[t]he typical construction procedure" for adjusting valve caps following asphalt paving. Noting East Broad Street fell under Union County's jurisdiction, Witczak stated he would not expect "the County paving staff would have access to gas company street hardware." Instead, according to Witczak,

> The County typically gives notice of a proposed paving project to the effected [sic] utility companies so that they can either make arrangements to provide valve box risers to the county paving crew or dispatch their own staff to execute the appropriate work to adjust the valve boxes flush with the new roadway surface.

6

A-3017-24

Accordingly, Witczak opined, "defendant[s] would have clear notice of this paving work and the potential for hazardous conditions that may be created by the paving process."

Witczak thus found "defendant[s] failed to take appropriate actions to eliminate the hazardous conditions caused by their facilities" and had "sufficient time" to do so. Citing various sections of the Westfield Municipal Code and New Jersey's Uniform Construction Codes, Witczak concluded the utility defendants' failure to raise the gap cap to align with the asphalt street violated the codes and industry standards. Witczak ultimately opined, "the hazardous conditions caused by the depressed and uneven valve box were the causes of [plaintiff's] accident."

Defendants moved for summary judgment asserting Bingham & Taylor manufactured the utility cover, and defendants installed the cover without modifications. Defendants therefore argued they were not liable because Elizabethtown Gas was an "innocent seller" pursuant to the Product Liability Act (PLA), N.J.S.A. 2A:58C-1 to -11.

Contending Witczak's conclusion on causation contradicted plaintiff's responses to their request for admissions, which were not referenced in his report, defendants further sought to bar Witczak's report as net opinion. To

A-3017-24

support their argument, defendants noted Witczak "provided no evidence, factual basis[,] or support for his opinion that the County 'typically' gives notice of the paving project to the affected utility company." But defendants did not expressly argue plaintiff failed to establish the elements of her negligence claim, including notice of the dangerous condition.

In her counterstatement of material facts in opposition to defendants' motion, plaintiff asserted while walking on East Broad Street, "she was caused to trip and fall after stepping into a depression on [sic] the street which caused her shoe to become caught under the lip of a metal gas cap cover/valve box." In opposition to defendants' motion, plaintiff argued her claims sounded in negligence; not product liability. She further contended Witczak's report was consistent with all her discovery responses and his failure to review her responses to defendants' request for admissions was fodder for cross-examination, but did not warrant barring his report.

In a written statement of reasons, memorialized by a January 3, 2025 order, the motion court granted defendants judgment as a matter of law. Finding plaintiff "pled a cause of action for premises liability, not products liability," the court determined plaintiff failed to identify any evidence demonstrating defendants were noticed of the dangerous condition that caused her injuries. In

a footnote, apparently referencing N.J.S.A. 2A:58C-9, the court stated, "[t]o the extent that this case could be construed as a products liability action, the instant motion would be granted because moving [d]efendants filed an appropriate affidavit naming the manufacturer of the gas cap cover." (Emphasis added).

Declining to address "whether . . . Witczak's testimony should be barred for its purported contradiction with [p]laintiff's admissions responses," the court found Witczak failed to support his opinion "that [d]efendants were the proximate cause of [p]laintiff's injuries based on their alleged failure to maintain the proper height of the gas cap cover." Accordingly, the court barred Witczak's testimony under the net opinion doctrine "to the extent" it offered this conclusion.

Plaintiff moved for reconsideration. We glean plaintiff's arguments from the motion court's ensuing statement of reasons accompanying the February 14, 2025 order. Plaintiff claimed the court erroneously determined Witczak rendered a net opinion. Contending expert testimony generally is not required to support a negligence claim, plaintiff alternatively asserted: she could prove her claim without Witczak's testimony; the court should conduct an N.J.R.E. 104 hearing; or the court should bar only the unsupported portion of Witczak's report.

The court denied reconsideration. In its decision, the court correctly recognized, because the January 3, 2025 summary judgment order was interlocutory, plaintiff's reconsideration motion was governed by Rule 4:42-2, not Rule 4:49-2 as cited by the parties. Extensively quoting its summary judgment decision, the court was not persuaded by plaintiff's arguments.

## II.

In our review of a summary judgment decision, we are required to measure the motion court's findings and conclusions "against the standards set forth in Brill." Great Atl. & Pac. Tea Co. v. Checchio, 335 N.J. Super. 495, 498 (App. Div. 2000). Those standards are well-established: summary judgment should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Brill, 142 N.J. at 528-29 (quoting R. 4:46-2(c)). We owe no deference to the trial court's legal analysis. The Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017).

As a general rule, absent an abuse of discretion, appellate courts will not disturb a trial court's order on a reconsideration motion. See Branch v. Cream-

10

O-Land Dairy, 244 N.J. 567, 582 (2021). Unlike reconsideration motions to alter or amend final judgments and final orders, governed by Rule 4:49-2, a motion for reconsideration of an interlocutory order – as was the summary judgment order here – is governed by the "far more liberal approach" set forth in Rule 4:42-2. Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021). "Rule 4:42-2 declares that interlocutory orders 'shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice.'" Ibid. (quoting R. 4:42-2).

## A. Summary Judgment

As a threshold matter, we address plaintiff's first argument that the motion court erroneously dismissed her complaint against the utility defendants. Plaintiff asserts the court's decision on summary judgment, left undisturbed on reconsideration, violated her right to due process because she lacked notice or an opportunity to be heard on a legal issue the utility defendants did not raise in their summary judgment motion. We agree.

"The minimum requirements of due process of law are notice and an opportunity to be heard." Klier v. Sordoni Skanska Constr. Co., 337 N.J. Super. 76, 84 (App. Div. 2001) (citing Doe v. Poritz, 142 N.J. 1 (1995)). "[A]t a minimum, due process requires that a party in a judicial hearing receive 'notice

defining the issues and an adequate opportunity to prepare and respond.'" J.D. v. M.D.F., 207 N.J. 458, 478 (2011) (quoting H.E.S. v. J.C.S., 175 N.J. 309, 321 (2003)). Indeed, a party must have "an opportunity to be heard at a meaningful time and in a meaningful manner." Klier, 337 N.J. Super. at 84.

Our courts have long recognized, "[a]n appropriate regard for the orderly judicial process requires that parties be given fair opportunity to pass on points critical to their cases." Too Much Media, LLC v. Hale, 413 N.J. Super. 135, 170 (App. Div. 2010) (quoting Rivera v. Gerner, 89 N.J. 526, 538 (1982)). Accordingly, "courts must guard against sua sponte action or 'resort[ing] to a "shortcut" for the purposes of "good administration" and circumvent[ing] the basic requirements of notice and an opportunity to be heard.'" Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458, 483 (App. Div. 2015) (alterations in original) (quoting Klier, 337 N.J. Super. at 84-85).

In the present matter, the motion court unexpectedly dismissed plaintiff's complaint against the utility defendants on a legal theory not advanced in their summary judgment motion. Plaintiff had no notice of the legal issue decided by the court and should have been afforded a meaningful and adequate opportunity to respond. Although we acknowledge defendants asserted Witczak did not support his conclusion Union County "typically" notifies utility companies of

12

its paving projects, in their summary judgment motion, defendants did not argue plaintiff failed to establish notice or proximate cause under her premises liability theory. Instead, they argued, "The Witczak report is a 'net opinion' which should be barred for contradicting" plaintiff's admission responses "concerning the cause and mechanism of her fall." And their dismissal argument was premised on the PLA's immunity.

Nor are we persuaded by the utility defendants' responding argument that the motion court determined summary judgment "would be granted" had the court considered their product liability theory. In its decision, the court expressly held plaintiff's claims sounded in negligence, not product liability. In a footnote, the court used conditional terms, theorizing that had it considered plaintiff's claim a product liability action, summary judgment "would be granted." The court did not, however, set forth its findings of fact and conclusions of law on the utility defendants' immunity claim under the PLA.

Notwithstanding our de novo standard of review, "our function as an appellate court is to review the decision of the trial court, not to decide the motion tabula rasa." Est. of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301-02 (App. Div. 2018). We have recognized "[t]he duty to find facts and state conclusions of law is explicit in R[ule] 1:7-4, iterated in connection with

motions for summary judgment in R[ule] 4:46-2,[4] and mandated where there is an appeal by R[ule] 2:5-1(b).[5]" In re Will of Marinus, 201 N.J. Super. 329, 339 (App. Div. 1985). We therefore decline the utility defendants' invitation to affirm the January 3, 2025 order under their product liability theory, based on the court's conditional finding in a footnote of its statement of reasons.

Under the circumstances presented, we are satisfied plaintiff was deprived due process. We therefore reverse the summary judgment dismissal of plaintiff's complaint for failure to demonstrate the utility defendants were on actual or constructive notice of the alleged dangerous condition and remand for the parties to brief the notice issue decided by the court, following the N.J.R.E. 104 hearing on Witczak's opinion as ordered below. In view of our decision, we decline to address plaintiff's alternative argument that genuine issues of fact precluded summary judgment on notice, and that notice is a question of fact for the jury's consideration. On remand, those arguments may be presented to the motion court.

---

[4]  Rule 4:46-2(c) requires that the trial court "find the facts and state its conclusions in accordance with R[ule] 1:7-4."

[5]  Under then Rule 2:5-1(b), now redesignated as Rule 2:5-1(d), the trial court may amplify its reasons within fifteen days of the appeal; the motion court did not do so here. See Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 300 (App. Div. 2009).

B.  Net Opinion

Before the motion court, the utility defendants claimed Witczak's opinion on causation "diverged from the evidence" because he failed to consider plaintiff's responses to their request for admissions, which "denied that the height elevation between the paving and the street and the utility cover caused her to fall."  (Emphasis omitted).  They also contended nothing in the record supported Witczak's opinion concerning the County's "typical" provision of notice to utility companies when roads are paved.  In its decision, the court declined to address defendants' first contention.  Instead, the court concluded Witczak merely speculated about the County's "typical" practice and, as such, barred his opinion on causation as net.

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court."  Townsend v. Pierre, 221 N.J. 36, 52 (2015).  We therefore accord deference to the trial court's grant of a motion to strike expert testimony, "reviewing it against an abuse of discretion standard."  Id. at 52-53 (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011)).

Expert testimony is admissible in the following circumstances:

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2)

the field testified to must be at a state of the art that such an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.

[DeHanes v. Rothman, 158 N.J. 90, 100 (1999) (quoting State v. Kelly, 97 N.J. 178, 208 (1984)).]

Our analysis also is guided by N.J.R.E. 702 and N.J.R.E. 703. The former rule establishes when expert testimony is permissible and requires the expert be qualified in his or her respective field. The latter rule requires "expert opinion be grounded in 'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts.'" Townsend, 221 N.J. at 53 (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)).

"The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (alterations in original) (quoting Polzo, 196 N.J. at 583). Therefore, an expert is required to "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)). Pursuant to the net opinion rule, experts must "be able to identify the

factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable." Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)).

Thus, "[t]he net opinion rule is succinctly defined as 'a prohibition against speculative testimony.'" Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013) (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)). That is because a speculating expert "ceases to be an aid to the trier of fact and becomes nothing more than an additional juror," Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div. 1996), affording no benefit to the fact finder, see N.J.R.E. 702.

However, our Supreme Court has warned against barring an expert's testimony based solely upon the expert's report, particularly if doing so will be dispositive of a case, when the expert has not had an opportunity to explain his or her opinions through testimony. See Kemp ex rel. Wright v. State, 174 N.J. 412, 432-33 (2002) (finding plain error where the trial court failed to conduct an evidentiary hearing even though the parties had not requested an N.J.R.E. 104 hearing). Further, although an expert witness generally is confined to the opinions contained in his or her report provided in discovery, Conrad v. Robbi, 341 N.J. Super. 424, 440-41 (App. Div. 2001), "the logical predicates for and

A-3017-24

conclusions from statements made in the report are not foreclosed," McCalla v. Harnischfeger Corp., 215 N.J. Super. 160, 171 (App. Div. 1987).  As the Court reiterated in Kemp, the trial court's role during an N.J.R.E. 104 hearing is to "determine whether the expert's opinion is derived from a sound and well-founded methodology that is supported by some expert consensus in the appropriate field."  174 N.J. at 427 (quoting Landrigan, 127 N.J. at 417).

In view of these legal principles, we conclude the trial court prematurely barred Witczak's testimony on causation as net opinion in the present matter because the expert's findings were not tested at deposition or an N.J.R.E. 104 evidentiary hearing.  This is especially so in this case where summary judgment flowed, in large part, from the barring of Witczak's report.  See id. at 432-33.

Witczak's report arguably sets forth at least some foundation for his causation opinion, as it cites codes and industry standards.  Notably, the utility defendants did not challenge Witczak's experience or his qualifications.  An expert's conclusions can be based on his or her personal experience and qualifications.  See State v. Townsend, 186 N.J. 473, 495 (2006) (allowing opinion testimony based on the expert's "education, training, and most importantly, her experience").

18

Accordingly, we conclude the motion court prematurely determined Witczak's opinion on causation was net and erred on reconsideration by not granting an evidentiary hearing to test the expert's opinion. We therefore remand the matter for a hearing pursuant to N.J.R.E. 104. At the conclusion of testimony, the court shall reconsider defendants' motion to bar Witczak's opinion on causation, after full briefing as ordered above. In remanding this matter, we do not suggest a preferred result.

Reversed and remanded. Jurisdiction is not retained.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division